Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL CRAWFORD,<br><br>Plaintiff,<br><br>vs.<br><br>SPECTRUM PHARMACEUTICALS, INC., WILLIAM L. ASHTON, BRITTANY K. BRADRICK, SETH H.Z. FISCHER, JUHYUN LIM, THOMAS J. RIGA, and JEFFREY L. VACIRCA,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Daniel Crawford ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**<u>SUMMARY OF THE ACTION</u>**

1. Plaintiff brings this stockholder action against Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Assertio Holdings, Inc. ("Parent"), through

merger vehicle Spade Merger Sub 1, Inc. ("Merger Sub," and together with Parent, "Assertio") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an April 25, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").

3. On June 2, 2023, Assertio filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction.

4. The Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Spectrum and Assertio, provided by Spectrum and Assertio management to the Board and the Board's financial advisor Guggenheim Securities, LLC ("Guggenheim") or Assertio's financial advisors SVB Securities, LLC ("SVB") and H.C. Wainwright & Co., LLC ("Wainwright"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Guggenheim, SVB, and/or Wainwright, if any, and provide to the Company and the Board.

5. This action seeks to enjoin the Proposed Transaction.

## PARTIES

6. Plaintiff is a citizen of Pennsylvania and, at all times relevant hereto, has been a Spectrum stockholder.

7. Defendant Spectrum is a biopharmaceutical company, develops and commercializes oncology drug products. Spectrum is incorporated in Delaware and has its principal place of business at Pilot House-Lewis Wharf 2, Atlantic Avenue, Boston, MA 02110.

8. Defendant William L. Ashton ("Ashton") has been a Director of the Company at all relevant times. Ashton also serves as the Chair of the Company Board.

9. Defendant Brittany K. Bradrick ("Bradrick") has been a director of the Company at all relevant times.

10. Defendant Seth H.Z. Fischer ("Fischer") has been a director of the Company at all relevant times.

11. Defendant Juhyun Lim ("Lim") has been a director of the Company at all relevant times.

12. Defendant Thomas J. Riga ("Riga") has been a director of the Company at all relevant times. Riga also serves as the Company's President and Chief Executive Officer ("CEO").

13. Defendant Jeffrey L. Vacirca ("Vacirca") has been a director of the Company at all relevant times.

14. Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

16. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

18. Spectrum is a biopharmaceutical company, develops and commercializes oncology drug products.

19. The Company offers ROLVEDON(Eflapegrastim), a novel long-acting granulocyte colony-stimulating factor for chemotherapy-induced neutropenia. Spectrum also develops Poziotinib, a novel irreversible tyrosine kinase inhibitor for non-small cell lung cancer tumors with various mutations.

20. The Company's most recent performance press release, revealing performance results from the year preceding the announcement of the Proposed Transaction, indicated clinical success. In the March 22, 2023 press release announcing its Q4 and FY 2022 financial and clinical results, the Company highlighted such clinical successes as the first launch year for ROLVEDON,

with net sales for the quarter and year end totaling $10.1 million. CEO Riga stated, "It's been a transformative year for Spectrum as we have become a commercially focused company. We've approached the launch of ROLVEDON with a disciplined strategy and an understanding that Spectrum's long-term growth is dependent upon the product's success. We're off to a solid start and are encouraged by the initial customer receptivity to ROLVEDON."

21. The Individual Defendants have caused Spectrum to enter into the Proposed Transaction without providing requisite information to Spectrum stockholders such as Plaintiff.

***The Proposed Transaction***

22. On February 23, 2023, Spectrum and ASSERTIO issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **LAKE FOREST, Ill., and BOSTON, April 25, 2023 (GLOBE NEWSWIRE)** – Assertio Holdings, Inc. (Nasdaq: ASRT) ("Assertio"), a specialty pharmaceutical company offering differentiated products to patients, and Spectrum Pharmaceuticals, Inc. (Nasdaq: SPPI) ("Spectrum"), a commercial stage biopharmaceutical company focused on novel and targeted oncology, today announced that they have entered into a definitive agreement pursuant to which Assertio will acquire all outstanding shares of Spectrum in an all-stock and contingent value rights ("CVR") transaction.
>
> "The addition of Spectrum's commercial capabilities and ROLVEDON, a novel long-acting G-CSF product recently launched into a blockbuster market in October 2022, exemplifies Assertio's attractiveness as an acquirer of new, accretive assets across diverse therapeutic categories, and ability to continue their growth and achieve profitable contributions faster and more efficiently than could be achieved on a standalone basis. We intend to retain the majority of Spectrum's commercial infrastructure, which we believe is synergistic to our digital non-personal platform, deploying these complementary dual channels to support clinical messaging, reimbursement education and ROLVEDON awareness to further aid and accelerate its launch," said Dan Peisert, President and Chief Executive Officer of Assertio.
>
> "We are excited to combine with Assertio in a transaction that will deliver significant value to our stockholders and the opportunity to share in the future upside of ROLVEDON," said Tom Riga, President and Chief Executive Officer of Spectrum Pharmaceuticals. "Our mission at Spectrum has always been to make a difference in the lives of patients and with Assertio, we have a partner that will enable us to deliver on this promise. Our combined assets and commercial

infrastructure will position us to accelerate ROLVEDON's launch for the benefit of patients, maximize its potential and drive further growth. We are proud of the launch trajectory our team has achieved with ROLVEDON and look forward to an exciting new chapter."

**Terms of the Agreement**

Under the terms of the agreement, at closing, Spectrum stockholders will receive a fixed exchange ratio of 0.1783 shares of Assertio common stock for each share of Spectrum common stock they own, implying an upfront value of $1.14 per Spectrum share (approximately $248 million) based on Assertio's stock price on April 24, 2023 and an initial 65% premium to Spectrum's closing price on such date. Additionally, Spectrum stockholders will receive one CVR per Spectrum share entitling them to receive up to an additional $0.20 per share in total (approximately $43 million), payable in cash or stock at Assertio's election, for $1.34 (approximately $291 million), a total potential premium of 94%. Subject to adjustments, each CVR shall represent the right to receive $0.10 payable upon ROLVEDON net sales (less certain deductions) achieving $175 million during the calendar year ending December 31, 2024, and $0.10 payable upon ROLVEDON net sales (less certain deductions) achieving $225 million during the calendar year ending December 31, 2025.

Following the close of the transaction, Assertio stockholders will own approximately 65% of the combined company, and Spectrum stockholders will own approximately 35%, on a fully diluted basis.

**Transaction Strategic and Financial Rationale**

Strengthened Commercial Infrastructure and Resources: Assertio's innovative digital non-personal sales model complements Spectrum's in-person commercial infrastructure, providing greater market access and resources than either company as a standalone entity.

Expected to Be Accretive to Adjusted EPS and Operating Cash Flow in 2024: Assertio intends to retain the majority of Spectrum's commercial team and add operating costs of approximately $60 million annually. The remaining cost synergies are expected to accelerate and enhance the profit opportunities for the combined company and generate double-digit accretion to adjusted EPS and increased operating cash flow in 2024.

Enhanced IP Portfolio: ROLVEDON's intellectual property protection is anticipated to extend through 2036, complementing Assertio's portfolio of traditional and non-traditional IP protection, including assets with protection extending beyond 2040 and plans to secure additional protections on existing assets.

> Improved Strategic Profile: The transaction enables the combined company to have a more scalable and competitive infrastructure for continuing the development and acquisition of existing and prospective new commercial- and late development-stage products suited to Assertio's unique omni-channel sales strategy.
>
> Platform Diversification: In addition to Assertio's key assets Indocin, Sympazan and Otrexup, Spectrum's key asset ROLVEDON will represent meaningful further asset diversification. ROLVEDON is a long-acting growth factor (G-CSF) indicated to decrease the incidence of infection, as manifested by febrile neutropenia, in adult patients with non-myeloid malignancies receiving myelosuppressive anti-cancer drugs associated with clinically significant incidence of febrile neutropenia.
>
> Access to Capital Markets: With enhanced scale and greater diversification of revenue generating commercial assets, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the capital markets.
>
> **Approvals and Timing to Close**
>
> The transaction, which has been approved by the boards of directors of both companies, is expected to close in the third quarter of 2023, subject to approval by Assertio and Spectrum stockholders and the satisfaction of customary closing conditions.

***The Materially Misleading and/or Incomplete Registration Statement***

23. On June 2, 2023, the Registration Statement was filed with the SEC. It is in violation the Exchange Act as it fails to provide Plaintiff with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff.

*Omissions and/or Material Misrepresentations Concerning Spectrum Financial Projections*

24. The Registration statement discloses management-prepared financial projections for the Company which are materially misleading.

25. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view

of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

26. The Registration Statement fails to disclose material line items regarding the *Spectrum Financial Projections*, prepared by Spectrum management:

a. Gross Profit; and

b. Unlevered Free Cash Flow.

27. The Registration Statement fails to disclose material line items regarding the *Assertio Adjusted Spectrum Projections*, prepared by Spectrum management and adjusted by Assertio management:

a. Gross Profit;

b. Operating Incom; and

c. Unlevered Free Cash Flow.

28. The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

29. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

30. The Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning Assertio's Financial Projections*

31. The Registration statement discloses management-prepared financial projections for the Company which are materially misleading.

32. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

33. The Registration Statement fails to disclose material line items regarding the *Assertio Projections*, prepared by Assertio management:

a. Gross Profit;

b. Operating Income; and

c. Unlevered Free Cash Flow.

34. The Registration Statement fails to disclose material line items regarding the *Assertio Stand-Alone Financial Projections Developed by Spectrum Management*, prepared by Assertio management and adjusted by Spectrum management:

a. Gross Profit; and

b. Unlevered Free Cash Flow.

35. The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

36. In addition, while the Registration Statement provides a section for "estimated synergies" it fails to provide a breakdown of the constituent metrics underlying such projections.

37. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

38. The Board has violated the Exchange Act by failing to include such information in the Registration Statement

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Guggenheim*

39. In the Registration Statement, Guggenheim describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

40. With respect to the *Spectrum - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

a. Spectrum's net present value of the cash tax savings from net operating losses;

b. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 13.00% to 16.00%;

c. Spectrum's weighted average cost of capital; and

d. The terminal value as of December 31, 2031 for Spectrum utilized.

41. With respect to the *Spectrum - Equity Financing Analysis*, the Registration Statement fails to disclose.

a. The specific Analyst stock price targets utilized; and

b. The specific Wall Street firms and/or analysts which generated the utilized price targets.

42. With respect to the *Assertio - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

a. Assertio's net present value of the cash tax savings from net operating losses;

b. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.75% to 14.25%;

c. Assertio's weighted average cost of capital; and

d. The terminal value as of December 31, 2035 for Assertio utilized.

43. With respect to the *Assertio - Equity Financing Analysis*, the Registration Statement fails to disclose.

a. The specific Analyst stock price targets utilized; and

b. The specific Wall Street firms and/or analysts which generated the utilized price targets.

44. With respect to the *Pro Forma - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

a. Spectrum's net present value of the cash tax savings from net operating losses

b. Assertio's net present value of the cash tax savings from net operating losses;

c. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 13.00% to 16.00% for Spectrum

d. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.75% to 14.25% for Assertio;

e. Spectrum's weighted average cost of capital

f. Assertio's weighted average cost of capital; and

g. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.50% to 14.00% for the combined entity.

45. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

46. The Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by SVB*

47. In the Registration Statement, SVB describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the Assertio - Publicly Traded Companies Analysis, the Registration Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized multiple reference range of 1.6x to 2.9x EV/2023E Net Revenue;

b. The specific inputs and assumptions used to determine the utilized multiple reference range of 1.6x to 2.3x EV/2024E Net Revenue.

49. With respect to the *Assertio - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The terminal values for Assertio calculated;

b. The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -40.0% to -10.0%;

c. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 10.0% to 13.0%;

d. Assertio's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and

e. The "certain metrics" utilized, including the selected companies' levered and unlevered betas, a historical equity risk premium, size premia and yields for U.S. treasury notes, as well as a capital asset pricing model analysis of Assertio.

50. With respect to the *Assertio - Equity Financing Analysis*, the Registration Statement fails to disclose:

a. The specific Analyst stock price targets utilized; and

b. The specific Wall Street firms and/or analysts which generated the utilized price targets.

51. With respect to the Spectrum - Publicly Traded Companies Analysis, the Registration Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized multiple reference range of 3.2x to 6.1x EV/2023E Net Revenue; and

b. The specific inputs and assumptions used to determine the utilized multiple reference range of 2.3x to 4.0x EV/2024E Net Revenue

52. With respect to the *Spectrum - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The terminal values for Spectrum calculated;

b. The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -40.0% to -10.0%;

c. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.0% to 14.0%;

d. Spectrum's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and

e. The "certain metrics" utilized including the selected companies' levered and unlevered betas, a historical equity risk premium, size premia and yields for U.S. treasury notes, as well as a capital asset pricing model analysis of Spectrum.

53. With respect to the *Spectrum - Equity Financing Analysis*, the Registration Statement fails to disclose.

a. The specific Analyst stock price targets utilized; and

b. The specific Wall Street firms and/or analysts which generated the utilized price targets

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

55. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. The Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Wainwright*

56. In the Registration Statement, Wainwright describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

57. With respect to the *Assertio – Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 8.5% to 11.5%;

b. Assertio's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and

c. The "certain company-specific inputs" utilized, including Assertio's capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a company beta, in addition to certain financial metrics relating to U.S. financial markets;

d. The range of illustrative terminal values for Assertio calculated;

e. The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -40.0% to -20.0%; and

f. The enterprise value for Assertio calculated.

58. With respect to the *Assertio – Select Companies Analysis — 2023 and 2024 Revenue Multiples*, the Registration Statement fails to disclose the following:

a. The specific metrics observed for all selected companies analyzed;

b. The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 2.0x to 3.7x for FY 2023E Revenue; and

c. The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 1.5x to 3.4x for FY 2024E Revenue.

59. With respect to the *Spectrum – Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 9.7% to 12.7%;

b. Spectrum's weighted cost of capital utilized and the specific inputs and assumptions used to determine it; and

c. The "certain company-specific inputs" utilized, including Spectrum's capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a company beta, in addition to certain financial metrics relating to U.S. financial markets;

d. The range of illustrative terminal values for Spectrum calculated; and

e. The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of -30.0% to -10.0%.

60. With respect to the *Spectrum – Select Companies Analysis — 2023 and 2024 Revenue Multiples*, the Registration Statement fails to disclose the following:

a. The specific metrics observed for all selected companies analyzed;

b. The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 2.1x to 8.6x for FY 2023E Revenue; and

c. The specific inputs, metrics, and assumptions used to determine the utilized multiple reference range of 1.2x to 4.7x for FY 2024E Revenue.

61. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

62. Without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Spectrum stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

63. Plaintiff repeats all previous allegations as if set forth in full herein.

64. Defendants have disseminated the Registration statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

65. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

66. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any Registration statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

67. The Registration statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration statement is materially misleading and omits material facts that are necessary to render them non-misleading.

68. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

69. The Individual Defendants were at least negligent in filing a Registration statement that was materially misleading and/or omitted material facts necessary to make the Registration statement not misleading.

70. The misrepresentations and omissions in the Registration statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

71. Plaintiff repeats all previous allegations as if set forth in full herein.

72. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

73. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The

Individual Defendants were able to, and did, control the contents of the Registration statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Spectrum's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration statement and are therefore responsible and liable for the misrepresentations contained herein.

75. The Individual Defendants acted as controlling persons of Spectrum within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Spectrum to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Spectrum and all of its employees. As alleged above, Spectrum is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 09, 2023

**BRODSKY & SMITH**

By: Evan J. Smith

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

**OF COUNSEL**

Douglas Risen
Risen Law, LLC
1900 JFK Blvd., Suite 910
Philadelphia, PA 19103
Phone: 215.201.2824
drisen@comcast.net